United States District Court
Southern District of Texas
**ENTERED**
September 21, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **CHRISTIAN FERRON,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:20-CV-3123** |
| | § | |
| **PRECISION DIRECTIONAL** | § | |
| **SERVICES, INC.,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending before the Court[1] is Defendants' Motion to Compel Arbitration. (Dkt. No. 20.) Also pending is Defendants' Motion to Dismiss. (Dkt. No. 10.) Based on a thorough review of the motions, arguments, and relevant law, the Court **RECOMMENDS** the Motion to Compel Arbitration be **GRANTED** and the Motion to Dismiss be **DENIED AS MOOT**.

**I.     BACKGROUND**

Plaintiff Christian Ferron ("Ferron") brought this action on behalf of himself and other similarly situated employees under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), alleging Defendants Precision Directional Services, Inc. and Precision Drilling Corporation (collectively, "Precision") violated the FLSA's overtime provisions. (Dkt. Nos. 1, 15.) Ferron alleges that he connected with Precision, an oilfield service company, through a referral entity and worked as a Measurement While Drilling field operator from July 2018 to March 2020. (Dkt. No. 15 ¶¶ 5, 11.) According to Ferron, he was misclassified as an independent contractor and

---

[1] On November 16, 2020, the District Judge referred the entire case to the undersigned Magistrate Judge for full pretrial management pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Federal Rule of Civil Procedure 72. (Dkt. No. 17.)

received a fixed daily rate for his work. (*Id.* ¶ 12.) Ferron alleges that he was actually an employee under the FLSA and should have received 1.5 times his normal hourly rate when he worked overtime. (*Id.* ¶ 19.) Since Ferron filed his complaint, two other workers have submitted consents opting into the collective under 29 U.S.C. § 216(b). (Dkt. Nos. 13, 14.)

On November 25, 2020, Precision filed a Motion to Compel Arbitration seeking to enforce an arbitration agreement between Ferron and RigUp—the labor platform Ferron used to connect with Precision—as a third-party beneficiary. (Dkt. No. 20.)[2] On July 8, 2018, before using RigUp, Ferron signed an Agreement Between Independent Professional & RigUp for Use of RigUp Service ("Agreement"). (Dkt. No. 20-2.) The Agreement incorporates by reference the RigUp Terms of Service ("Terms"), provides a link where workers can access the Terms online, and requires workers to acknowledge that they have read and agree to the Terms. (*Id.*) Section 24 of the Terms covers Dispute Resolution and Arbitration and was modified sometime between February and August 2019 to include references to "RigUp's customers." (Dkt. No. 20-1 ¶ 10; Dkt. No. 20-5 § 24.)

Section 24 of the original Terms stated:

a. Generally. In the interest of resolving disputes between you and RigUp in the most expedient and cost effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration. . . . This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory[.] You understand and agree that, by entering into these Terms, you and RigUp are each waiving the right to a trial by jury or to participate in a class action.

c. Arbitrator. Any arbitration between you and RigUp will be settled under the Federal Arbitration Act, and governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes

---

[2] RigUp connects workers in the oil industry with available jobs and facilitates payments between companies and workers who use the service. (Dkt. No. 20-1 ¶¶ 4–5.)

(collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Terms, and will be administered by the AAA.

*Hiser v. NZone Guidance, L.L.C*, Case No. 18-CV-1056, Dkt. No. 15-3 (W.D. Tex. Feb. 20, 2019) (emphasis omitted).[3] Section 24 of the modified Terms states:

> a. Generally. In the interest of resolving disputes between you and RigUp, *or you and RigUp's customers*, in the most expedient and cost effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration. . . . This agreement to arbitrate disputes includes all claims arising out of or relating to any aspect of these Terms, whether based in contract, tort, statute, fraud, misrepresentation, or any other legal theory[.] You understand and agree that, by entering into these Terms, you and RigUp are each waiving the right to a trial by jury or to participate in a class action.
>
> c. Arbitrator. Any arbitration between you and RigUp, *or you and RigUp's customers*, will be settled under the Federal Arbitration Act, and governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Terms, and will be administered by the AAA.

(Dkt. No. 20-5 § 24 (emphasis changed).) RigUp modified the Terms in order to clarify its intent to make customers third-party beneficiaries after a federal district court ruled that the original Terms did not do so. (Dkt. No. 20-1 ¶ 10); *see Hiser v. NZone Guidance, L.L.C.*, Case No. 18-CV-1056, Dkt. No. 36 (W.D. Tex. Apr. 2, 2019).[4] Ferron had 30 days to reject the modified Terms, but he did not do so. (*See* Dkt. No. 20-5 § 24(g).)[5] Instead, he continued using RigUp's service and thereby accepted the modified Terms. (*See id.* § 3; Dkt. No. 20-1 ¶ 12.)

---

[3] Neither party includes the original Terms as exhibits in the briefing. However, Ferron asserts that the original Terms he signed were the same as those in *Hiser v. NZone Guidance*. (Dkt. No. 24 at 6.) Precision does not argue otherwise.

[4] The decision was later affirmed by the Fifth Circuit. *See Hiser v. NZone Guidance, L.L.C.*, 799 F. App'x 247, 248–49 (5th Cir. 2020).

[5] Both the original and modified Terms state: "If RigUp makes any future change to this arbitration provision, . . . you may reject the change by sending us written notice within 30 days of the change . . . , in which case your account with RigUp will be immediately terminated and this arbitration provision, as in effect immediately prior to the changes you rejected will survive."

In its Motion to Compel Arbitration, Precision argues it is one of RigUp's customers that can enforce the Agreement and modified Terms as a third-party beneficiary. (Dkt. No. 20 at 8–11.) Ferron opposes arbitration, arguing that the Court must look to the original Terms to determine whether companies like Precision are third-party beneficiaries and that the Fifth Circuit has already decided they are not. (Dkt. No. 24 at 5–8.) Even if the Court considers the modified Terms, Ferron asserts that the arbitration provision does not clearly make Precision a third-party beneficiary because its use of the term "RigUp's customers" is confusing and ambiguous. (*Id.* at 8–11.) Finally, Ferron argues that the arbitration provision is illusory because it can be modified without notice and that it does not cover the wage claims asserted in this case. (*Id.* at 11–16.)

As discussed below, the Court finds that the modified Terms are applicable and sufficiently clear to confer a third-party beneficiary status on Precision. The Court also finds that the arbitration provision contains a delegation clause—which Ferron does not challenge in particular—and thus an arbitrator must determine threshold questions of arbitrability such as whether the arbitration provision is illusory or covers the claims asserted in this case. The Court therefore recommends Precision's Motion to Compel Arbitration be granted and the case be dismissed.[6]

## II. THE FEDERAL ARBITRATION ACT

The Federal Arbitration Act ("FAA") establishes "a liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quotations omitted). Section 2 of the FAA provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist

---

[6] Defendants also filed a partial Motion to Dismiss. (Dkt. No. 10.) However, given that Ferron subsequently amended his complaint and given that the case is subject to arbitration, the Motion to Dismiss should be **DENIED AS MOOT**.

at law or in equity for the revocation of any contract." 9 U.S.C. § 2. If a party brings a motion to compel arbitration under the FAA and the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue," the court must direct parties to arbitration. *Id.* § 4. In other words, "once a court finds an agreement to arbitrate between the parties, the court is restricted to enforcing the agreement." *Matos v. AT&T Corp.*, No. 18-CV-2591, 2019 WL 5191922, at *2 (N.D. Tex. Sept. 9, 2019), *report and recommendation adopted*, 2019 WL 5191487 (Oct. 15, 2019).

Courts generally conduct a two-step analysis in deciding whether to compel arbitration under the FAA: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that agreement. *Mendoza v. Fred Haas Motors, Ltd.*, 825 F. App'x 200, 202 (5th Cir. 2020). The court typically makes both determinations. *Id*. However, "parties can agree to arbitrate gateway questions of arbitrability," and an arbitration agreement may contain a delegation clause giving the arbitrator authority to decide threshold issues. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (quotations omitted); *Mendoza*, 825 F. App'x at 202. When an agreement contains a purported delegation clause, the first question of the court's inquiry remains whether an arbitration agreement was formed, but the second question becomes "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016). If so, the court must compel arbitration unless the party opposing arbitration challenges the delegation clause specifically. *Rent-A-Ctr.*, 561 U.S. at 72.[7]

---

[7] "In summary, we first look to see if an agreement to arbitrate was formed, then determine if it contains a delegation clause. If there is an agreement to arbitrate with a delegation clause, and

In making these determinations, the court applies state-law principles governing contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also Sanchez v. Marathon Oil Co.*, No. 20-CV-1044, 2021 WL 1201677, at *2–3 (S.D. Tex. Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 1198251 (Mar. 30, 2021).[8] "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). "Although there is a presumption favoring liberal construction of arbitration clauses, that presumption is not applicable to the threshold determination [of] whether a party has agreed to arbitrate." *Blaustein v. Huete*, 434 F. App'x 304, 305 (5th Cir. 2010) (citation omitted); *see also ConocoPhillips Co. v. Graham*, No. 11-CV-503, 2012 WL 1059084, at *5 (Tex. App. Mar. 29, 2012).

### III. FERRON'S CLAIMS ARE SUBJECT TO ARBITRATION

As a threshold matter, the Court notes that the two other workers who opted into the FLSA collective are not yet party-plaintiffs in the case. *See Baugh v. A.H.D. Houston, Inc.*, No. 20-CV-291, 2020 WL 2771251, at *8 (S.D. Tex. May 28, 2020) (explaining that opt-ins are not parties until the court grants conditional certification and orders notice to the collective); *Cooper v. Terminix Int'l Co.*, No. 17-CV-3671, 2018 WL 1998973, at *5–6 (S.D. Tex. Apr. 11, 2018) (same), *report and recommendation adopted*, 2018 WL 1997281 (Apr. 27, 2018). The Court, therefore, focuses its inquiries on Ferron only.

---

absent a challenge to the delegation clause itself, we will consider that clause to be valid and compel arbitration." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018).

[8] The parties here agree that Texas law applies. (*See* Dkt. No. 20 at 8–9; Dkt. No. 24 at 7.)

### A. An Arbitration Agreement Exists

The first question is whether there is a relevant agreement to arbitrate. *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) (citing *Kubala*, 830 F.3d at 201–02). In conducting this inquiry, the court must distinguish between "formation" or "existence" challenges and "validity" or "enforceability" challenges. *Id.* Formation and existence challenges must be decided by the court, whereas validity and enforceability challenges can be delegated to an arbitrator. *Id.*; *see Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004) ("[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter."). Within its inquiry into contract formation or existence, the court may consider whether arbitration can be compelled by a third-party beneficiary. *See Noble Cap. Grp. v. US Cap. Partners, Inc.*, No. 20-50721, 2021 WL 3477481, at *2 (5th Cir. Aug. 6, 2021) (considering whether non-signatory can compel arbitration within the question of whether an agreement to arbitrate was formed); *Ward v. Am. Airlines, Inc.*, 498 F. Supp. 3d 909, 921 (N.D. Tex. 2020) (same).

Here, a relevant agreement to arbitrate exists between Ferron and RigUp. It is undisputed that Ferron signed the Agreement, which incorporates by reference the Terms containing the arbitration provision. It is also undisputed that Ferron used RigUp's services from July 2018 until March 2020 without challenging the arbitration provision or its modification. Ferron's only argument is that the arbitration provision is illusory because it allows RigUp to modify or terminate it without advance notice. (Dkt. No. 24 at 11–14.) "On its surface, an illusoriness challenge would appear to be in the nature of an existence challenge" to be decided by the court, since "illusory promises imply lack of adequate consideration." *Arnold*, 890 F.3d at 550. However, the Fifth Circuit has found that the argument an arbitration provision within a larger contract is illusory is,

in fact, a validity challenge that can be delegated to an arbitrator. *Id.* at 551; *see also Aviles v. Russell Stover Candies, Inc.*, 559 F. App'x 413, 415 (5th Cir. 2014). This is because an arbitration provision that is part of a larger contract can be supported by the consideration of that contract. *Arnold*, 890 F.3d at 551 (citing *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015)). Ferron's argument that the arbitration provision within the Agreement and its Terms is illusory therefore does not challenge the *existence* of an agreement. In the presence of an unchallenged delegation clause, the Court may not decide this issue.[9]

The Court must next determine whether Precision is a third-party beneficiary of the arbitration agreement. Ferron argues that only the original Terms are relevant to this inquiry, citing cases that state "a court must look to the intentions of the parties *at the time the contract was executed*" when analyzing a third-party beneficiary theory. (Dkt. No. 24 at 5.)[10] However, this language is meant to ensure those that incidentally benefit from a contract—rather than those intended to benefit—are not considered third-party beneficiaries. *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 362–63 (5th Cir. 2003); *In re Citgo Petroleum Corp.*, 248 S.W.3d 769, 775–76 (Tex. App. 2008). The cases do not involve contract modifications that potentially add third-party beneficiaries and thus do not speak to which version should be analyzed in that context. Ferron has otherwise provided no authority that arbitration agreements cannot be modified

---

[9] Even if this were a question for the court rather than an arbitrator, the arbitration provision here is not illusory. It clearly states that workers must be given advance notice of any modifications before they become effective and that modifications must be posted on RigUp's website or sent via email. (Dkt. No. 20-5 §§ 3, 24(g).)

[10] There is no doubt that the original Terms—which refer to disputes involving only "you and RigUp"—do not confer third-party beneficiary status on companies like Precision. *See Hiser*, 799 F. App'x at 248–49; *Oldham v. Nova Mud, Inc.*, No. 20-CV-1166, 2021 WL 4066691, at *7– 10 (D.N.M. Sept. 7, 2021) (rejecting a third party's attempt to enforce the very same arbitration provision under Texas law).

to include third-party beneficiaries.[11] Ferron's argument is unpersuasive and the Court will look to the modified Terms in its analysis.

A non-signatory can compel arbitration under the FAA as provided by state law, including as a third-party beneficiary. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *Jody James Farms, JV v. The Altman Grp.*, 547 S.W.3d 624, 633 (Tex. 2018). Under Texas law, a non-signatory is a third-party beneficiary "if it establishes that (1) the parties to the contract intended to secure a benefit to it and (2) entered into the contract directly for its benefit." *ConocoPhillips*, 2012 WL 1059084, at *6; *see First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). There is a presumption against conferring third-party beneficiary status, which can only be overcome by the parties' clear expression of intent. *Brumitt*, 519 S.W.3d at 103. "But a clear showing of intent to benefit a third-party does not require the phrase 'third-party beneficiary' or any other magic words. Nor must a third-party beneficiary be expressly identified by name in the agreement." *ConocoPhillips*, 2012 WL 1059084, at *6 (citation omitted). Instead, "[a] third-party beneficiary may be identified in the agreement by class or category of persons, all of whom may not be known to the contracting parties at the time of execution." *Id*. "Courts look 'solely to the contract's language, construed as a whole' to determine whether the contracting parties intended to benefit a third party directly." *Flynn v. Sanchez Oil & Gas Corp.*, No. 19-CV-867, 2020 WL 1083825, at *3 (W.D. Tex. Mar. 6, 2020) (quoting *Brumitt*, 519 S.W.3d at 102).

Here, the arbitration provision in the modified Terms states: "In the interest of resolving disputes between you and RigUp, *or you and RigUp's customers*, in the most expedient and cost

---

[11] Indeed, arbitration agreements are contracts that can be modified. *See, e.g.*, *Cont'l Ins. Co. v. Emerald Star Casino Natchez, L.L.C.*, No. 07-CV-3862, 2008 WL 1884046, at *2–3 (E.D. La. Apr. 25, 2008) (enforcing modification of arbitration provision).

effective manner, you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration." (Dkt. No. 20-5 § 24(a) (emphasis added).) Courts consistently find similar language to confer third-party beneficiary status. *See, e.g.*, *German v. Halliburton Co.*, No. 18-CV-100, Dkt. No. 34 (S.D. Tex. Mar. 20, 2019) (finding provision that required arbitration of disputes that workers "may have against [staffing company] *or against its clients*" made the staffing company's clients third-party beneficiaries); *ConocoPhillips*, 2012 WL 1059084, at *6 (finding arbitration provision that covered "all disputes between or among [employees] and [employer's] clients" created third-party beneficiaries, as the provision would otherwise have no legal effect). The clause providing that "[a]ny arbitration between you and RigUp, *or you and RigUp's customers*, will be settled under the Federal Arbitration Act" is further confirmation of intent. (Dkt. No. 20-5 § 24(c) (emphasis added).)

Ferron argues the arbitration provision is confusing at best because it maintains the phrase "you and RigUp," instead of "you and RigUp's customers," in two parts: (1) "you and RigUp agree that every dispute arising in connection with these Terms will be resolved by binding arbitration;" and (2) "[y]ou understand and agree that, by entering into these Terms, you and RigUp are each waiving the right to a trial by jury or to participate in a class action." (*Id.* § 24(a); *see* Dkt. No. 24 at 9.) But this phrasing makes sense. It would be inaccurate to say, for example, that "you and RigUp's customers agree that every dispute arising in connection with these Terms will be resolved by binding arbitration." Ferron and RigUp were the parties to the contract, not Precision, and that is exactly why Precision seeks to compel arbitration as a third-party beneficiary. The Court finds these phrases to be consistent with the intent to confer third-party beneficiary status on RigUp's customers.

Ferron next argues it is unclear whether the term "RigUp's customers" is intended to cover companies like Precision who are referred to as "companies" or "third parties" elsewhere in the Agreement. (Dkt. No. 24 at 9–10.) However, these terms are not conflicting or mutually exclusive, and it is unreasonable to argue that companies who use RigUp to find workers do not obviously qualify as customers. *See Goldsborough v. Newpark Drilling Fluids, LLC*, No. 19-CV-309, 2020 WL 619211, at *4 (D.N.M. Feb. 10, 2020) (finding that the term "client" in arbitration clause unambiguously created third-party beneficiary under Texas law given the purpose of the agreement); *Allen v. W&T Offshore, Inc.*, No. 18-CV-305, 2019 WL 2996695, at *3 (S.D. Tex. July 1, 2019) (rejecting argument plaintiff did not know defendant was an "Electing Entity" that could compel arbitration as a third-party beneficiary), *report and recommendation adopted*, 2019 WL 3202214 (July 16, 2019); *Baumeister v. Reagan*, No. 12-CV-276, 2013 WL 530976, at *3 (Tex. App. Feb. 14, 2013) (finding arbitration provision unambiguous and noting that, "for an ambiguity to exist when the parties advance conflicting interpretations, both interpretations must be reasonable") (quotations and alterations omitted). Ferron's argument is unpersuasive.

Finally, Ferron argues the other language in the modified Terms supports his position. (Dkt. No. 24 at 10–11.) For example, Ferron points to Section 17 of the modified Terms which states: "RigUp is not affiliated with any vendor, operator, . . . or third party service, and any dispute you have with [these entities] is directly between you and that third party." (Dkt. No. 20-5 § 17 (emphasis omitted).) It is true that, when viewed as part of the *original* Terms, this section might indicate the lack of intent to create third-party beneficiaries. *See Oldham v. Nova Mud, Inc.*, No. 20-CV-1166, 2021 WL 4066691, at *8 (D.N.M. Sept. 7, 2021) (noting Section 17 supported a finding that the original Terms did not create third-party beneficiaries because "RigUp had no issue referring to third parties where it wished" and thus "the omission [of references to third

parties] in the arbitration provision was likely purposeful"). However, it does not follow that Section 17 contradicts the *modified* Terms which expressly require arbitration between workers and RigUp's customers. Section 17 only provides that Ferron must release RigUp in connection with disputes involving companies like Precision. The same is true for the other provisions Ferron cites. These provisions do not undermine the intent to create third-party beneficiaries.

RigUp and Ferron clearly expressed intent to make companies like Precision third-party beneficiaries to the arbitration provision in the modified Terms. There would otherwise be no way to give meaningful effect to the language in the provision. *See Berryman v. Newalta Env't Servs., Inc.*, No. 18-CV-793, 2018 WL 5723290, at *6 (W.D. Pa. Nov. 1, 2018) (applying Texas law and finding arbitration provision created third-party beneficiary status for company's clients based on the principle that all language in a contract should be given effect). The Court, therefore, finds that an agreement to arbitrate exists and that Precision may attempt to enforce that agreement.

## B. Threshold Questions Have Been Delegated to the Arbitrator

The next question is whether the parties intended to arbitrate gateway questions of arbitrability—*i.e.*, whether the agreement contains a delegation clause directing that "the arbitrator decide whether a given claim must be arbitrated." *Kubala*, 830 F.3d at 202. "Courts should not assume that the parties agreed to delegate unless there is clear and unmistakable evidence of an arbitrability delegation." *Moore v. Maverick Nat. Res., LLC*, No. 20-CV-591, 2020 WL 6431905, at *2 (S.D. Tex. Oct. 15, 2020), *report and recommendation adopted*, 2020 WL 6392854 (Nov. 2, 2020). Incorporation of the American Arbitration Association ("AAA") rules—which give the arbitrator power to decide his own jurisdiction—constitutes such evidence. *Mendoza*, 825 F. App'x at 202 & n.2; *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th

Cir. 2012). Unless the party resisting arbitration challenges the delegation clause specifically, the court must treat it as valid. *Arnold*, 890 F.3d at 554.[12]

> It is undisputed here that the agreement to arbitrate incorporates the AAA Rules:
>
> Any arbitration between you and RigUp, or you and RigUp's customers, will be settled under the Federal Arbitration Act, and governed by the Commercial Dispute Resolution Procedures and the Supplementary Procedures for Consumer Related Disputes (collectively, "AAA Rules") of the American Arbitration Association ("AAA"), as modified by these Terms, and will be administered by the AAA.

(Dkt. No. 20-5 § 24(c).) The modified Terms also explicitly state that "[t]he arbitrator has exclusive authority to resolve any dispute relating to the interpretation, applicability, or enforceability of this binding arbitration agreement." (*Id.* § 24(h).) Thus, the modified Terms manifest an intent for the arbitrator to decide whether Ferron's claims are subject to arbitration. *See, e.g.*, *Alvarado v. Conn Appliances, Inc.*, No. 16-CV-464, 2016 WL 6834020, at *2 (W.D. Tex. Nov. 17, 2016), *report and recommendation adopted*, 2016 WL 10950458 (Dec. 14, 2016). Absent a challenge to the delegation clause in particular, this would normally require the Court to compel arbitration without further analysis.

However, some courts have expressed reluctance to enforce delegation clauses when non-signatories are involved. For example, in *Jody James Farms, JV v. Altman Group*, the Texas Supreme Court stated that the incorporation of AAA rules into an arbitration agreement is subject to a "different [analysis] when a dispute arises between a party to the arbitration agreement and a non-signatory." 547 S.W.3d at 632. The court there held that the agreement's incorporation of the AAA rules was insufficient because it did so only with respect to disputes between signatories. *Id.* at 632–33. The court also noted that the agreement did not "otherwise expressly extend the

---

[12] This is because delegation clauses are severable from agreements to arbitrate. *Rent-A-Ctr.*, 561 U.S. at 71–72; *Edwards*, 888 F.3d at 744.

contract's benefits to third parties." *Id.* at 633. A federal district court followed this reasoning and found that the court must decide arbitrability because "[t]he delegation clause does not expressly state that it applies to claims against nonsignatories." *Moore*, 2020 WL 6431905, at *2.

The arbitration and delegation clauses in this case are distinguishable. The delegation clause here specifically states that arbitration between "you and RigUp's customers" would be governed by the AAA rules. (Dkt. No. 20-5 § 24(c).) The arbitration provision also clearly and unmistakably creates third-party beneficiaries, as described above. And unlike in *Jody James Farms*, a non-signatory here is attempting to compel a signatory to arbitration. *See Alvarado*, 2016 WL 6834020, at *3 (considering the fact that the party attempting to avoid arbitration was a signatory to the contract in granting non-signatory's motion to compel arbitration); *Ruff v. Ruff*, No. 18-CV-326, 2020 WL 4592794, at *4 (Tex. App. Aug. 11, 2020) ("[C]oncerns about foisting an arbitration agreement on a party that had not previously agreed to arbitrate do not exist here."). The Court, therefore, finds the delegation clause is relevant to non-signatories in this case and must be treated as valid absent a challenge to that clause in particular.

Ferron argues that the arbitration provision as a whole is illusory and that his claims do not fall within its scope. (Dkt. No. 24 at 11–17.) This does not constitute a challenge to the delegation clause in particular. *See Noble Cap. Grp.*, 2021 WL 3477481, at *2. Given that the agreement contains a clear delegation clause and that Ferron does not specifically challenge this clause, Ferron's arguments must be decided in arbitration. *See Aviles*, 559 F. App'x at 415 (finding delegation clause required arbitrator to evaluate whether arbitration agreement was illusory and whether plaintiff's claims fell within its scope, given that plaintiff did not challenge the delegation clause specifically); *see also Arnold*, 890 F.3d at 554 (compelling arbitration after concluding "that there is a contract between the parties that contains a putative arbitration provision, that the parties

have agreed to delegate threshold questions about the arbitration provision to an arbitrator, and that [plaintiff] does not specifically challenge the validity of the delegation clause").

The Court also finds that dismissal of the case, rather than a stay, is appropriate. While the FAA directs courts to stay a case pending arbitration, *see* 9 U.S.C. § 3, the Fifth Circuit has clearly held that courts may instead dismiss a case "when *all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992); *see also Allen*, 2019 WL 2996695, at *4 ("The decision whether to stay or dismiss a case when compelling arbitration is left to the broad discretion of the district court."). Here, Ferron has only asserted FLSA claims against Precision, which must be sent to arbitration. Therefore, the Court recommends dismissing these claims with prejudice. *See, e.g.*, *Allen*, 2019 WL 2996695, at *4 (dismissing case with prejudice in favor of arbitration).[13]

## IV. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** Defendants' Motion to Compel Arbitration (Dkt. No. 20) be **GRANTED** and Plaintiff's claims be **DISMISSED WITH PREJUDICE**. The Court also recommends Defendants' Motion to Dismiss (Dkt. No. 10) be **DENIED AS MOOT**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written

---

[13] The dismissal with prejudice should not apply to opt-ins because they are not yet parties in this case. *See Cooper*, 2018 WL 1998973, at *5–6 (compelling arbitration for named plaintiff and dismissing without prejudice claims by opt-ins when the court had not yet granted conditional certification of the collective action).

objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the Undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas on September 21, 2021.

Sam S. Sheldon
United States Magistrate Judge